UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Conservation Law Foundation, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Portside Marine Service, Inc.<br><br>Defendant. | )<br>)<br>) Case No. 1-16-cv-10033<br>)<br>) **COMPLAINT FOR**<br>) **DECLARATORY AND INJUNCTIVE**<br>) **RELIEF AND CIVIL PENALTIES**<br>)<br>)<br>)<br>)<br>) (Federal Water Pollution Control Act,<br>) 33 U.S.C. §§ 1251 to 1387)<br>)<br>) |

## INTRODUCTION

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* (the "Clean Water Act," "the Act," or "CWA").  Plaintiff seeks declaratory judgment, injunctive relief, and other relief the Court deems proper to remedy Defendant Portside Marine Service, Inc.'s (hereinafter "Defendant") violations of the Clean Water Act, which include past and ongoing unauthorized discharges of polluted stormwater associated with industrial activities at the water transportation and boat building and repair facility located at 106 Liberty Street, Danvers, MA 01923 into waters of the United States, and Defendant's failure to comply with applicable U.S. Environmental Protection Agency ("EPA") National Pollutant Discharge Elimination System ("NPDES") permits, including the

1

Multi-Sector General Permit for Stormwater Discharges Associated With Industrial Activity ("Multi-Sector General Permit" or "MSGP").

2.      Section 301(a) of the Clean Water Act makes "the discharge of any pollutant by any person […] unlawful" except when in conformance with enumerated statutory provisions, including the requirement that a discharge obtain and comply with a NPDES permit under Section 402 of the Act.  *See* 33 U.S.C. §§ 1311(a), 1342.

3.      Stormwater discharged from industrial activities requires a NPDES permit. EPA has specifically acknowledged that when stormwater or snowmelt comes into contact with activities at industrial facilities, the runoff  picks up pollutants and transports them to nearby storm sewer systems or to rivers, lakes, and coastal waters. Therefore, EPA's NPDES program includes the MSGP that covers 29 categories of industrial activity.

4.      Defendant has operated and continues to operate a water transportation and boat building and repair facility located at 106 Liberty Street, Danvers, MA 01923 (hereinafter "the Facility") since at least 1984, and, upon information and belief, engages in industrial activities including vessel refinishing and painting, vessel and equipment fluid changes, equipment maintenance and cleaning, pressure washing of boat hulls and vehicle exterior washing; dry dock and boat lift operation and maintenance; engine flushing and maintenance; fueling, material handling, storage, and disposal; operating and storing heavy machinery and equipment outdoors; and driving vehicles on and off the Facility, thereby tracking pollutants off-site.

5.      Defendant's industrial activities fall within enumerated categories of industrial activity subject to the Multi-Sector General Permit and generate stormwater pollution that

is collected, channeled, and conveyed into the Danvers River, a water of the United States.

6.    These activities generate stormwater pollution that is collected, channeled, and conveyed into the Danvers River, a water of the United States within the Charles watershed.  Danvers River ultimately flows into Beverly Harbor, also within the Charles River Watershed, which drains to the Atlantic Ocean.

7.    Defendant's past and ongoing discharges of stormwater associated with industrial activity are not authorized by an individual NPDES permit or the applicable MSGP, including the recently-issued 2015 MSGP.

8.    Defendant has operated, and continues to operate, its water transportation and boat building and repair facility in violation of the Clean Water Act.

## JURISDICTION AND VENUE

9.    Plaintiff brings this civil suit under the citizen suit enforcement provisions of Section 505 of the Clean Water Act, 33 U.S.C. § 1365.  This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

10.    On November 9, 2015, Plaintiff notified Defendant of its intention to file suit for violations of the Clean Water Act, in compliance with the statutory notice requirements under Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2.  A true and accurate copy of Plaintiff's notice letter is appended as Exhibit A.

11. More than sixty days have elapsed since Plaintiff served the notice letter on Defendant, during which time neither the EPA nor the Commonwealth of Massachusetts has commenced a court action to redress the violations alleged in this complaint. 33 U.S.C. § 1365(b)(1)(B).

12. Venue is proper in the U.S. District Court for the District of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

13. Plaintiff, CLF, is a nonprofit, member-supported, regional organization dedicated to protecting New England's environment. It is incorporated under the laws of Massachusetts with its principal place of business at 62 Summer Street, Boston, MA, 02110. CLF has over 3,000 members, including more than 1,600 members in Massachusetts. CLF has long worked to protect the health of New England's waterways, including addressing the significant water quality impacts of stormwater pollution. CLF members use and enjoy New England's waterways for recreational and aesthetic purposes, including boating, swimming, fishing, hunting, and sightseeing, including but not limited to waters of the United States affected by Defendant's unpermitted discharges of pollutants. CLF actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

14. Defendant's unauthorized discharges of pollutants into the Danvers River, flowing into Beverly Harbor within the Charles watershed, adversely affect CLF members' use and enjoyment of those water resources. The interests of CLF's members

4

have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act and the Multi-Sector General Permit. The relief sought in this action will redress these harms. The unlawful acts and omissions described herein have and will continue to irreparably harm Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

15. Defendant Portside Marine Service, Inc. is a corporation in good standing, organized under the laws of Massachusetts, and with a principal place of business at 106 Liberty Street, Danvers, MA 01923. Robert G. LeBlanc is the president and director of Portside Marine Service, Inc. and is also Defendant's registered agent. Defendant operates a water transportation and boat building and repair facility at 106 Liberty Street, Danvers, MA 01923. Defendant maintains, operates, and is responsible for industrial activities at the Facility.

## STATUTORY AND REGULATORY BACKGROUND

16. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States from a point source, unless the discharge complies with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

17. Section 502(14) of the Clean Water Acts defines "point source" broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which

pollutants are or may be discharged." *See* 33 U.S.C. § 1362(14).  Under the regulations implementing the Clean Water Act, the definition of "discharge of a pollutant" includes "additions of pollutants into waters of the United States from: surface runoff which is collected or channelled by man [.]" 40 C.F.R. § 122.2.

18.     In 1987, Congress amended the Clean Water Act to require that facilities engaged in certain industrial activities obtain stormwater discharge permits. Water Quality Act of 1987, Pub. L. No. 100-4, § 405, 101 Stat 7 (1987); *see* 55 Fed. Reg. 47990, 47991-93 (Nov. 16, 1990).  Accordingly, Section 402 of the CWA directed the EPA to develop a phased approach for regulating stormwater discharges under the NPDES permitting program.  33 U.S.C. §§ 1342(a)(1), 1342(*p)(*2), 1342(p)(3)(A), 1342(p)(4), 1342(p)(6).

19.     In 1990, in furtherance of the requirements of Section 402, the EPA promulgated regulations, set forth at 40 C.F.R. § 122.26, requiring regulated industrial dischargers to submit applications for NPDES permit coverage no later than October 1, 1992.  In establishing these regulations, EPA relied upon significant data showing the harmful effects of stormwater runoff on rivers, streams, and coastal areas across the nation. In particular, EPA found that runoff from industrial facilities contained elevated pollution levels. 55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

20.     In September 1995, EPA issued a NPDES Storm Water Multi-Sector General Permit for Industrial Activities. EPA reissued the MSGP in October 2000, 65 Fed. Reg. 64746, in September 2008, 73 Fed. Reg. 56572, and most recently in June 2015. 80 Fed. Reg. 34,403.

21.     To discharge stormwater lawfully, industrial dischargers like Defendant who operate facilities subject to regulation must obtain coverage under the Multi-Sector

6

General Permit and comply with its requirements or obtain coverage under an individual NPDES permit.

22.     Under the MSGP, industrial dischargers must file with the EPA a complete and accurate notice of intent ("NOI") to be covered by the MSGP and develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") identifying and controlling sources of pollutants associated with industrial discharges from the subject facility.

23.     The 2015 MSGP required each subject facility to file its NOI for coverage by September 2, 2015.

24.     The 2015 MSGP has several key changes from the prior MSGP, including but not limited to, requiring disclosures in the NOI to be in electronic format, increasing the amount of detail regarding stormwater outfalls and receiving waters that a discharger must include in its NOI to receive permit coverage, and modifying effluent limitation requirements, inspections, corrective actions, and other industry-specific requirements.

25.     Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation."

26.     Such enforcement action under CWA Section 505(a) includes an action seeking remedies for unauthorized discharges in violation of Section 301 of the Clean Water Act, 33 U.S.C § 1311, as well as for failing to comply with one or more permit conditions in violation of Sections 402 and 505(f) of the Act, 33 U.S.C. §§ 1342, 1365(f).

27.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per violation for all violations occurring after January 12, 2009. *See* 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1–19.4.

## FACTS

28.     Upon information and belief, since at least 1984 Defendant has operated, and continues to operate, a water transportation and boat building and repair facility at 106 Liberty Street, Danvers, MA 01923.

29.     The primary activities at the Facility fall under Standard Classification ("SIC") Codes 3732 ("ship and boat building or repairing yards") and 4493 ("water transportation facilities") and are among the sectors of industrial activity covered by the Multi-Sector General Permit (*see* 2015 Multi-Sector General Permit Appendix D, Sectors Q and R, and/or the activities listed in 40 C.F.R. § 122.26(b)(14).

30.     Upon information and belief, Defendant has engaged and continues to engage in the following industrial operations at the Facility: vessel refinishing and painting; vessel and equipment fluid changes; equipment maintenance and cleaning; pressure washing of boat hulls and vehicle exterior washing; dry dock and boat lift operation and maintenance; engine flushing and maintenance; fueling, material handling, storage, and disposal; operating and storing heavy machinery and equipment outdoors; and driving vehicles on and off the Facility via driveways and immediate access roads.

31.     Areas of industrial activity at the Facility are uncovered, and therefore exposed to precipitation.

32.     Upon information and belief, the sources of pollutants associated with the industrial activities at the Facility include, but are not limited to: travel lifts, marine

8

railways and ramp systems, outfalls, catch basins, drains, boats and equipment left outdoors, site grading and sloped surfaces, fueling stations, the vehicles driving on and off the Facility, and other conveyances to waters of the United States.

33.    Upon information and belief, pollutants present in stormwater discharged from the Facility include, but are not limited to: paint solids, heavy metals, total suspended solids (TSS), total dissolved solids (TDS), diesel and gas fuel, ethylene glycol (anti-freeze), acid and alkaline wastes, solvents, oil, low density waste (floatables), road salt (which in turn contains chlorides, sodium and impurities), detergents, trash, and other pollutants associated with the Facility's operations.

34.    EPA considers precipitation above 0.1 inches during a 24-hour period a measurable precipitation event.  40 C.F.R. § 122.26(c)(i)(E)(6).

35.    The 2015 Multi-Sector General Permit specifically references snowmelt as a form of stormwater discharge that must be addressed by a discharger in its control measures. 2015 Multi-Sector General Permit Part 2.1.2.1.

36.    During every measurable precipitation event and every instance of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the Facility, generating stormwater runoff associated with the Facility's industrial activity.

37.    Upon information and belief, stormwater runoff from the Facility has been and continues to be conveyed by the operation of gravity via site grading, site infrastructure, slopes, subsurface hydrological connections, and other conveyances into the Danvers River.

38.    The Danvers River is within the Charles watershed and flows immediately into Beverly Harbor.  Beverly Harbor flows to the Atlantic Ocean.

9

39.     The Danvers River is a "water of the United States," as defined in 40 C.F.R.

§ 122.2, and therefore a "navigable water," as defined in 33 U.S.C. § 1362(7).

40.     The Environmental Protection Agency (EPA) has designated portions of the

Danvers River as impaired under Section 303(d) of the Clean Water Act (Act).

41.     Defendant discharges directly and indirectly into the Danvers River.

42.     Upon information and belief, stormwater runoff from the Facility is not treated to

remove the pollutants referenced in Paragraph 33, above, before it is discharged into the

Danvers River.

43.     Upon information and belief, Defendant has failed to obtain coverage under the

MSGP, or any other valid NPDES permit for the Facility.

44.     Upon information and belief, as of January 11, 2016, Defendant  is discharging

pollutants in violation of the Clean Water Act as evidenced by the following:

(a)     Defendant has not filed an electronic NOI as required by the 2015 MSGP;

(b)     Defendant has not developed, implemented, and filed with the NOI, a

Stormwater Pollution Prevention Plan that meets the requirements of the 2015

MSGP Part 8; and

(c)     Defendant has failed to install and implement control measures to meet

numeric and non-numeric effluent limitations in Part 2.1 of the 2015 MSGP.

45.     Accordingly, Defendant is not authorized to discharge from the Facility under the

2015 Multi-Sector General Permit because it has not met all requirements of Part 1.2 of

the 2015 MSGP.

10

**CLAIMS FOR RELIEF**

**First Cause of Action:**
**Unauthorized Discharge of Pollutants Into Waters of the United States**

46.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

47.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with a NPDES permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

48.     In order to be authorized to discharge lawfully under the Multi-Sector General Permit, a regulated industrial discharger's facility must meet requirements set forth in Part 1.3.1 of the MSGP.  These requirements include:

(a) Establishing  eligibility for coverage under the permit;

(b) Selecting, designing, installing, and implementing control measures in accordance with MSGP Part 2.1;

(c) Developing a complete and accurate SWPPP in accordance with the MSGP's requirements; and

(d) Filing a complete and accurate NOI to seek coverage under the permit.

49.     Defendant is an industrial discharger engaged in activities with SIC Codes 3732 and 4493 and/or another activity listed under Appendix D of the Multi-Sector General Permit or 40 C.F.R. § 122.26(b)(14), which means Defendant is obligated to apply for coverage under the MSGP or other legal authorization for its Facility.

50.     Defendant's industrial activities at the Facility have resulted in, and continue to result in, "stormwater discharge associated with industrial activity," within the meaning

11

of 40 C.F.R. § 122.26(b)(14), to waters of the United States on every day of precipitation greater than 0.1 inches and every instance of snowmelt.

51.     Defendant's discharges of stormwater associated with industrial activity ("industrial stormwater discharges") are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).

52.     Defendant's industrial stormwater discharges at the Facility are "point source" discharges into waters of the United States.

53.     Industrial stormwater discharges at the Facility have caused and continue to cause discharges of pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

54.     Since at least 1984, Defendant has discharged and continues to discharge industrial stormwater without authorization under a valid NPDES permit as required by CWA Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

55.     Each and every day on which Defendant has discharged and continues to discharge industrial stormwater from the Facility without authorization under a valid NPDES permit constitutes a distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

**Second Cause of Action:**
**Failure to Obtain a Permit for Industrial Discharges**

56.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

57.     Defendant has been required to obtain permit coverage for its Facility under each of the MSGPs issued by EPA, including the 1995, 2002, 2008 and 2015 MSGPs, or by

12

seeking and obtaining an individual NPDES permit pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

58. Defendant has failed, and continues to fail, to obtain permit coverage under the MSGP or an individual NPDES permit for its Facility.

59. Each and every day on which Defendant has not had permit coverage for its Facility is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

### Third Cause of Action:
### Failure to Comply with a Permit for Industrial Stormwater Discharges

60. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

61. Regulated industrial discharges are required at a minimum to comply with the requirements of the MSGP, which include but are not limited to:

(a) Developing and implementing a complete and accurate Stormwater Pollution Prevention Plan;

(b) Submitting a complete Notice of Intent to be covered by the MSGP, accompanied by a complete and accurate SWPPP;

(c) Implementing required stormwater control measures;

(d) Conducting facility inspections in accord with the MSGP (2015 Multi-Sector General Permit Part 3);

(e) Conducting site inspections and submitting the results thereof to EPA (2015 Multi-Sector General Permit Part 3);

(f) Monitoring and analyzing stormwater samples consistent with procedures set forth in the Multi-Sector General Permit, including but not limited to

benchmark monitoring and monitoring for discharges to an impaired water (2015 Multi-Sector General Permit Part 6 and Appendix B);

(g) Complying with reporting and recordkeeping requirements, including but not limited to reporting of any noncompliance during an applicable time period (2015 Multi-Sector General Permit Part 7);

(h) Satisfying sector-specific requirements such as requirements pertaining specifically to water transportation and ship and boat building (2015 Multi-Sector General Permit Part 8, Subparts Q and R);

62. Defendant has failed, and continues to fail, to comply with the requirements of the Multi-Sector General Permit, including each of the requirements described above.

63. Each and every day on which Defendant has failed to comply with the Multi-Sector General Permit is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

## RELIEF REQUESTED

64. Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a) Declare Defendant to have violated and to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for its Facility's unlawful and unauthorized discharges of pollutants to waters of the United States;

(b) Declare Defendant to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for its failure to obtain coverage under the Multi-Sector General Permit for the Facility;

14

(c)    Declare Defendant to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for its failure to comply with all applicable requirements of the Multi-Sector General Permit for the Facility;

(d)    Enjoin Defendant from discharging pollutants from the Facility into waters of the United States except as authorized by and in compliance with a National Pollutant Discharge Elimination Permit;

(e)    Order Defendant to comply fully and immediately with all applicable requirements of the Multi-Sector General Permit for the Facility;

(f)    Order Defendant to pay civil penalties of $37,500 per day for each violation of the Clean Water Act at the Facility pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1–19.4;

(g)    Order Defendant to take appropriate actions to remedy harm caused by Defendant's noncompliance with the Clean Water Act;

(h)    Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

(i)    Award any such other and further relief as the Court may deem appropriate.

**JURY DEMAND**

Plaintiff does not request a jury trial.

15

Respectfully submitted,                    Dated: January 11, 2016

CONSERVATION LAW
FOUNDATION, INC.
By its attorney:

/s/ Caitlin Peale Sloan
CAITLIN PEALE SLOAN
BBO No. 681484
Conservation Law Foundation, Inc.
62 Summer Street
Boston, MA 02110
cpeale@clf.org
(617) 850-1770

16