Case 1:16-cv-10033-RGS   Document 4-1   Filed 01/11/16   Page 1 of 10

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF

16 CV 10033 RGS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.  ) | Case No. |
| Plaintiff,  ) | ~~Proposed~~ **Consent Decree** |
| v.  ) | |
| Portside Marine Service, Inc.,  ) | |
| Defendant.  ) | |

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on January 11, 2016, against Portside Marine Service, Inc. ("Portside" or "Defendant"), alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs;

WHEREAS, Portside owns and operates a marina and boat maintenance Facility located at 106 Liberty Street, Danvers, MA 01923 (hereinafter the "Facility");

WHEREAS, CLF has alleged that the Facility discharges stormwater and process wastewater to the Danvers River, which flows into Beverly Harbor and thereafter the Atlantic Ocean;

WHEREAS, Portside has applied for and agreed to comply with a stormwater discharge permit for the Facility and has developed and begun to implement an engineered stormwater pollution prevention plan in support of that permit application;

WHEREAS, Portside has stated it does not discharge process wastewater and has agreed to prevent any discharges of process wastewater unless such discharges are covered under and in accordance with a Clean Water Act discharge permit;

WHEREAS, CLF is a regional, nonprofit environmental organization;

WHEREAS, CLF has alleged in its complaint (the "Complaint") and in a letter dated November 9, 2015, sent to Portside and others, that Portside has violated and continues to violate Section 505 of the Federal Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1365(a); and

WHEREAS, CLF and Portside (collectively, "the Parties" or individually "Party") agree that resolution of this matter without further litigation is in the best interest of the Parties and the

1

public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Portside of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction).   An actual, justiciable controversy exists between Plaintiff and Defendant.   The requested relief is proper under  28 U.S.C. § 2201, 28 U.S.C. § 2202 and 33 U.S.C. § 1365(a).

2.    Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action occurred at the Facility, located at 106 Liberty Street, Danvers, MA 01923, which is located within this judicial district.

## II.    COMPLIANCE PROGRAM

3.    Within ninety (90) days of the date on which the Court enters this consent decree (the date on which the Court enters this consent decree is the "Effective Date"), Defendant shall obtain and maintain coverage under the United States  Environmental Protection Agency ("EPA") National Pollutant Discharge Elimination  System ("NPDES") 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("2015 MSGP") and shall prevent all process wastewater discharges to waters of the United States unless those process water discharges are covered by and in accordance with the conditions of an individual NPDES permit. Neither the Facility nor the Defendant shall discharge pollutants to waters of the United States from the Facility except in compliance with applicable federal and state statutes, regulations and permits.  Defendant and the Facility shall comply with the Clean Water Act.

## III.    MONITORING PROGRAM

4.    Portside shall monitor and sample four (4) times per year at all outfalls/discharge points discharging stormwater associated with industrial activity from the Facility for pollutants identified in the MSGP for Sector Q (i.e. *ALUMINUM, IRON, LEAD*, and *ZINC*) commencing on the Effective Date. The inspections must be performed pursuant to the requirements of the MSGP and include, at a minimum, all areas where industrial activities are exposed to either precipitation or stormwater runoff. Defendant will send a copy of each inspection and/or sampling result to CLF no later than ten (10) days after receipt.

5.    Portside shall also comply with all other inspection and monitoring requirements of the MSGP including, but not limited to, those of Part 3 regarding the in-house inspection of control structures and storage areas after rain events. Defendant will send a copy of each inspection and/or sampling result to CLF no later than ten (10) days after receipt.

6.    Portside may take additional samples of its stormwater discharges.  If it does  so,

Portside will send a copy of each such inspection and/or sampling result to CLF no later than ten (10) days after receipt.

7.      During the first year after the Effective Date of this Decree, Portside shall implement additional control measures, if any, and/or maintain control measures at the Facility as necessary to meet the benchmark levels for MSGP Sector Q (i.e. *ALUMINUM*, *IRON*, *LEAD*, and *ZINC*). If, after the end of twelve months from the Effective Date of this Decree, Portside's quarterly monitoring results for any parameter exceed MSGP Part 8, Sector Q benchmark levels, Portside agrees to pay stipulated additional Supplemental Environmental Project payments as set forth in Paragraph 11 of this Decree. Such stipulated additional Supplemental Environmental Project payments shall be calculated based on the number of monitoring parameters exceeded during a quarterly monitoring event, not on the number of discharge locations where a monitoring parameter is exceeded (*i.e.*, an exceedance of the iron monitoring parameter at three separate discharge locations sampled during one quarterly monitoring event shall result in one stipulated additional Supplemental Environmental Project payment, rather than three).

8.      During the life of the Decree, CLF, through representatives, may conduct one (1) yearly site inspection at the Facility. The site inspection shall occur during normal business hours and CLF's representatives shall be accompanied by Defendant's authorized representative during each site visit. During the site inspection, CLF representatives may collect water and soil samples, take photos at the Facility, and monitor compliance with the MSGP and the Decree. Any such samples shall be split samples with one of the split samples remaining in the possession of Portside and one with CLF. CLF will send a copy of each sampling result to Defendants no later than ten (10) days after receipt.

9.      During the life of the Decree, Portside shall copy CLF on all documents related to water quality or Clean Water Act compliance regarding the Facility submitted to the EPA, MA DEP, or any town. Such documents shall be provided to CLF concurrently as they are sent to the agencies and/or municipalities.

## IV.    SUPPLEMENTAL ENVIRONMENTAL PROJECT

10.     Portside shall make a Supplemental Environmental Project ("SEP") payment totaling fifteen thousand dollars ($15,000) to Salem Sound CoastWatch for the environmental protection and restoration of, or other environmental benefit to, the Danvers River Watershed. Defendant shall notify CLF in writing when each SEP payment is made and provide a copy of the check. This SEP amount shall be paid according to the following schedule
   a. $5,000 within fourteen days of the Effective Date of this Decree;
   b. $5,000 on or before June 30, 2017;
   c. $5,000 on or before June 30, 2018.

11.     For each exceedance of the MSGP benchmarks as described in Paragraph 7 of the Decree, above, Defendant will make an additional SEP payment to Salem Sound CoastWatch in the amount of five hundred dollars ($500) for the environmental protection and restoration of, or other environmental benefit to the Danvers River Watershed. Payment of each such additional amount shall be due fourteen (14) days following each exceedance. Defendant shall notify CLF in writing when each SEP payment is made and provide a copy of the check. Provided, however, that no additional SEP payment shall be due for any exceedance of an MSGP benchmark

3

revealed within the first twelve (12) months following the Effective Date.

12.     For each missed deadline included in this Decree, including but not limited to failures to timely conduct quarterly benchmark monitoring and inspections pursuant to Parts 3 and 4 of the MSGP, but not including missed payment deadlines (discussed in Paragraph 15 below), Portside shall make an additional SEP payment to Salem Sound CoastWatch in the amount of five hundred ($500) for the environmental protection and restoration of, or other environmental benefit to the Danvers River Watershed. Payment of each such additional amount shall be due fourteen (14) days following each missed deadline. Portside shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. Pursuant to Paragraph 36, below, Portside shall not be required to make such additional SEP payment for missed deadlines arising from a Force Majeure event.

13.     None of the SEP payments shall be disbursed to CLF.

## V.     LIQUIDATED ATTORNEY FEES AND COSTS

14.     Portside shall  pay to CLF a sum of twenty thousand dollars ($20,000) as full and complete satisfaction of CLF's claim for  attorneys' fees and costs incurred to date in this matter and for reasonably anticipated costs to be incurred in compliance monitoring and case management during the term of this Decree, including without limitation attorney fees, expert fees, filing fees, and other costs. These liquidated fees and costs shall be paid according to the following schedule:
   a. $4,000 within fourteen days of the Effective Date of this Decree;
   b. $4,000 on or before June 30, 2017;
   c. $4,000 on or before June 30, 2018;
   d. $4,000 on or before June 30, 2019; and
   e. $4,000 on or before June 30, 2020.

15.     In the event that any payment owed by Portside under the Decree is not made  on or before the due date, Portside shall be deemed in default of its obligations under  this Decree. In addition to a continued requirement to make said payment, Portside shall pay to CLF liquidated attorney fees of one hundred dollars ($100) for every day that  a payment is late.

## VI.     EFFECT OF DECREE

16.     CLF covenants not to sue and releases Portside (and its parent corporations, subsidiaries, officers, directors, shareholders,  representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who  have held positions in the past) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, past and future attorney's fees, past and future costs, or any other claim or relief (i) relating to, resulting from or alleging noncompliance with the Clean Water Act at the Facility occurring prior to the date the Court enters this Decree; (ii) for any violations that were alleged, or could have been alleged, in the Complaint; (iii) for the past conduct alleged to constitute violations in the CLF letter to Portside dated November 9, 2015 and (iv) for past violations alleged in any CLF correspondence to Portside dated prior to the date the Court enters this Decree concerning Portside's facility and operations.  Notwithstanding anything to the contrary contained herein, CLF retains all rights

4

necessary to enforce the terms of this Decree, including by the filing of a lawsuit.

17.     Portside covenants not to sue and releases and discharges CLF (and its subsidiaries, officers, directors, trustees, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with CLF's investigation of and actions regarding Portside.

18.     Neither this Decree, nor terms thereof, nor performance of the terms thereunder by Portside shall constitute or be construed as an admission or acknowledgment by Portside of the factual or legal assertions contained in this Decree or in CLF's Complaint, and Portside retains the right to controvert in any subsequent proceedings, other than proceedings for the purpose of implementing or enforcing this Decree, the validity of the facts or determinations contained in this Decree or the Complaint. Neither this Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by Portside of any liability, or an admission of violation of any law, by Portside or by its officers, directors, employees, agents, successors, or assigns.

19.     CLF does not, by consent to the Decree, warrant or aver in any manner that Portside's compliance with this Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligation of Portside to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

## VII.   REVIEW AND TERM OF DECREE

20.     The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the EPA. Therefore, after the signing of this decree by the Parties, the Parties shall jointly inform the Court of the decree, and CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

21.     Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties will jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate upon the following: (1) five years have passed from the Effective Date; (2) completion of all payment obligations set forth in this Decree. Alternately, if three years have passed from the Effective Date and all payment obligations set forth in this Decree have been completed, the Decree shall terminate after the Parties agree in writing that the previously stated obligations have been met.

22.     If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## VIII.   MODIFICATION AND ENFORCEMENT OF DECREE

23.     This Decree may be modified only upon written consent of the Parties and the

approval of the Court.

24.     This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.  If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and any Party may institute a new action in the United States District Court for the District of State concerning their respective rights and obligations under this Decree.

## IX.   MISCELLANEOUS PROVISIONS

25.     This Decree shall remain in effect if Portside relocates the Facility to a different location within the jurisdiction of the Clean Water Act and the regulations thereunder regarding stormwater discharge permits for a facility of the nature of Portside.

26.     Sections I, IV, V, VII, VIII, and IX of this Decree shall remain in effect if Portside ceases to be the operator of the Facility, regardless of whether the Facility continues to operate or not.

27.     All payments pursuant to this Decree shall be made in form of a certified bank check.

28.     Entire Agreement. This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

29.     Notices. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and either (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage  prepaid, or (d) sent by a nationally recognized courier service (i.e., Federal Express) for  next-day delivery, to be confirmed in writing by such courier.  Notices shall be directed  to the Parties at their respective addresses set forth below. Notices given in the foregoing  manner shall be deemed given when (a) sent via email, (b) actually received or refused by  the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual  delivery as shown by the addressee's registered or certified mail receipt or at the  expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff shall be sent to:

Caitlin Peale Sloan, Esq.
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
cpeale@clf.org

If sent by email, said email shall cc the address "kmckeen@clf.org."

6

Notices for Portside shall be sent to:

Portside Marine Service, Inc.
c/o Peter Bramberg
106 Liberty Street
Danvers, MA 01923
978-777-5727
portsidemarinedanvers@gmail.com

With a copy to:

Jamy Buchanan Madeja, Esq.
Buchanan & Associates
33 Mount Vernon Street
Boston, MA  02108
617-227-8410
jmadeja@buchananassociates.com

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

30.    Authorization. Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

31.    Successors and Assigns.  This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

32.    Interpretation.  The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

33.    Headings.  The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

34.    Counterparts.  Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes.  Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in separate counterparts, each of which when so executed and delivered shall be deemed an original and all of which taken together constitute but one and the same instrument.

35.    Severability.  In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely

affected.

36.     Force Majeure. For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Portside, including its contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 10 and 14 of this Decree, notwithstanding Portside's best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Portside complies with the notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Portside's financial difficulty in performing such work and acts or omissions attributable to Portside's contractors or representatives.

If any event occurs which may delay or prevent the performance of any obligation under this Decree, caused by a Force Majeure event, Portside shall notify CLF, at the address specified in Paragraph 29 above, within three (3) business days after Portside first knows, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Portside to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Portside the Facility can continue to operate in a manner which will not violate this Decree.

If CLF agrees that a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

CONSERVATION LAW FOUNDATION, INC.

By: _____Date:_____
    Christopher M. Kilian, Vice President
    Conservation Law Foundation
    15 East State Street, Suite 4
    Montpelier, VT 05602

PORTSIDE MARINE SERVICE, INC.

By: _____Date:__1/10/2016__
    Portside Marine Service, Inc., by Robert LeBlanc, Owner
    106 Liberty Street
    Danvers, MA  01923

ENTERED and DATED this 29th day of February, 2016

                                                             Honorable _____
                                                             United States District Judge

9

Case 1:16-cv-10033-RGS   Document 4-1   Filed 01/11/16   Page 10 of 10

**CONSERVATION LAW FOUNDATION, INC.**

By: _____   Date: 1/8/2016
    Christopher M. Kilian, Vice President
    Conservation Law Foundation
    15 East State Street, Suite 4
    Montpelier, VT 05602

**PORTSIDE MARINE SERVICE, INC.**

By: _____   Date: _____
    Portside Marine Service, Inc., by Robert LeBlanc, Owner
    106 Liberty Street
    Danvers, MA  01923

ENTERED and DATED this 29th day of February, 2016

_____
Honorable _____
United States District Judge

9